UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ROBERT PAYZANT, JR.,           )
                               )
            Plaintiff          )
                               )
v.                             )        1:11-cv-00321-JAW
                               )
PATRICA BARNHART,              )
                               )
            Defendant          )

**RECOMMENDED DECISION**

Robert Payzant pled guilty to charges of robbery, aggravated assault, and theft in the Maine Superior Court. He received concurrent sentences on the three charges, with the most serious sentence being imposed on the robbery conviction, to wit, twenty-five years, with all but eighteen years suspended, to be followed by a four year period of probation. Payzant has now filed a timely petition in this Court pursuant to 28 U.S.C. § 2254, reciting eleven separate grounds for relief. He claims he is entitled to relief because, for multiple reasons, his sentence violates the United States Constitution. Payzant also claims trial counsel were ineffective because they failed to properly represent Payzant at the Rule 11 proceeding, failed to investigate the case, failed to present character witnesses, and demonstrated assorted other claimed deficiencies. The State of Maine has moved to dismiss the petition. I now recommend that the Court grant the State's request for dismissal and deny Payzant's petition.

**FACTUAL BACKGROUND**

Payzant's guilty pleas were entered in connection with the strong-arm robbery of a man in the L.L. Bean parking lot in Freeport, Maine, on October 18, 2005. Payzant attacked the man, an L.L. Bean employee leaving work, and stole from him two credit cards, $40.00 in cash, a cell phone, and a blood sugar monitor with lot-numbered test strips. According to the police reports,

the victim stated that Payzant had struck him in the jaw, causing him to fall to the ground and black out for a few moments. When the victim regained consciousness, Payzant was on top of him, straddling him, rifling through his pockets, and when the victim attempted to resist, Payzant struck him again in the head area. The victim was not clear about how many times he was struck. As a result of the attack, the victim suffered a broken jaw and his jaw had to be wired shut for weeks. Within twenty minutes of the attack, the victim's identification and credit card were presented to purchase cigarettes at a local Freeport convenience store. Both the victim and clerk at the convenience store independently identified Payzant from photographs.

Payzant became a suspect in the robbery because of his criminal history, which included violent robbery convictions. Additionally, within two hours of the attack, the victim's credit cards were used at numerous convenience stores and gas stations in the Portland area to purchase cigarettes and some cell phone charges were also incurred. Approximately two weeks later, a Westbrook, Maine police detective became involved in a high speed chase involving a stolen vehicle. The driver who ran from the scene after the vehicle was finally stopped and identified as Payzant. Inside the stolen vehicle the police found credit card receipts from the victim's credit cards and blood test strips with the same lot number as those taken during the robbery.

Although Payzant has raised a laundry list of grounds in his federal habeas petition, which I will discuss *seriatim* below, the crux of his complaint with his two able and experienced defense attorneys is that they failed to bring to the Court's attention the fact that Payzant said he only struck one blow against the victim while the prosecutor spoke of the violence against the victim continuing after his jaw had been broken. At the time of Payzant's plea, while reciting the facts for purposes of Rule 11, the prosecutor stated that Payzant struck the victim in the head a second time while the victim was on the ground. When asked by the Court whether there was

any disagreement with the State's version, Payzant's counsel, after conferring briefly with Payzant, stated that there were some factual issues which did not change the elements of the felony offenses but with which Payzant disagreed. Counsel told the Court: "We'd certainly flesh that out at sentencing." (Rule 11 Tr. at 17.) Payzant testified at his state post-conviction hearing that he fully expected his attorneys to flesh out the facts at sentencing by attempting to establish, contrary to the prosecutor's version of events, that there had only been one punch. (Post-Conviction Tr. at 27-28.) The victim's statements on this issue had been ambivalent because he indicated that his memory of events was cloudy after the initial blow rendered him briefly unconscious.

The attorneys never delivered a "fleshing out" of the one-punch theory of the case, and when the Court imposed sentence it stated, "there was an initial moment of violence to sort of subject Mr. Crosby to the robber's possession and then there was further violence inflicted on Mr. Crosby." (Sentencing Tr. at 53.) Payzant now claims the attorneys' failure to pursue this "fleshing out" of the one-punch theory prejudiced him because he was subjected to a harsher sentence based upon inaccurate aggravating circumstances. Both attorneys testified that they made a strategic decision, with Payzant's full acquiescence, that the focus of the sentencing hearing would be remorse, acceptance of responsibility, and rehabilitation, and that raising this "factual" dispute would simply dilute their overriding message. That Payzant acquiesced to this strategy is supported by his statement at sentencing that, "[s]uffice to know that not everything that was said was factual, you know, but I feel like if I get into that, I'm getting away from what is most appropriate here." (Sentencing Tr. at 41.)

Payzant's eleven grounds for relief can be roughly divided into two separate categories. Grounds one, two, three, four, nine, ten, and eleven claim perceived constitutional deficiencies with the state court process. Grounds five through eight claim ineffective assistance of counsel at both the appellate and trial court levels, focusing on claimed deficiencies in representation during the Rule 11 proceeding. Although Payzant's prayer for relief asks that this Court vacate the convictions and remand to the State trial court for further proceedings, it does not appear that he is claiming that he is entitled to trial or that he is actually innocent of the robbery. Payzant actually appears to seek resentencing. In fact, at his state court post-conviction proceeding Payzant testified as to his role in the offense and his responsibility for the injuries inflicted upon the victim.

**A.      The Direct Constitutional Challenges to the State Court Process**

Payzant's attempt to directly challenge the decisions of the Maine courts flounders on three separate doctrines. First, to the extent Payzant is challenging the application of a state sentencing law, matters of state law are not redressable in federal habeas proceedings under 28 U.S.C. § 2254(a). Second, to the extent Payzant never raised a federal constitutional claim in the state court, these grounds for relief have been procedurally defaulted. Finally, based upon the deferential standard of review required under 28 U.S.C. § 2254, the challenged decision of the state post-conviction court is unassailable.

Payzant's first ground for relief claims that the trial court erred because it misapplied State v. Hewey, 622 A.2d 1115 (Me. 1993), and because the court also violated Payzant's rights to equal protection and due process of law under the Fourteenth Amendment and further violated his constitutional rights under the Double Jeopardy Clause when it sentenced him for Aggravated

Assault and Theft because both of those crimes were subsumed within the Robbery charge. To the extent that Payzant is claiming that the sentencing judge misapplied Maine precedent in his <u>Hewey</u> analysis, "[a] federal court may not issue the writ on the basis of a perceived error of state law." <u>Pulley v. Harris</u>, 465 U.S. 37, 41 (1984). <u>See also</u> <u>Barclay v. Florida</u>, 463 U.S. 939, 957-58 (1983) ("[The petitioner's] varied assertions seem to suggest that the Florida Supreme Court failed to properly apply its own cases in upholding petitioner's death sentence. The obvious answer to this question . . . is that mere errors of state law are not the concern of this Court, <u>Gryger v. Burke</u>, 334 U.S. 728, 731 (1948), unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution.").

Payzant's constitutional challenges to the sentence's legality could have been raised in a direct appeal to the Law Court. On direct appeal, the Law Court reviews only the legality, not the propriety, of a sentence. <u>State v. Hodgkins</u>, 2003 ME 57, ¶ 5 n.3, 822 A.2d 1187, 1190; <u>State v. Mahan</u>, 1998 ME 143, ¶ 1 n.3, 711 A.2d 1314, 1315. Here the record does not include, separate from the application for leave to appeal the sentence pursuant to Rule 20(a)(1) of the Maine Rules of Appellate Procedure, any notice of direct appeal of conviction. The time for filing a direct appeal has long since transpired and, thus, Payzant has procedurally defaulted any issues about the legality of the sentence that he might have raised on direct appeal. Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies by fairly presenting his claim in each appropriate state court, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to correct any alleged violations of federal rights. <u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004). Payzant attempts to overcome his procedural default by relying upon his ineffective assistance claims against trial and appellate counsel to demonstrate the cause and prejudice that could conceivably defeat a procedural bar. (Reply Mem. at 2, Doc. No. 13.) I am

confident that Payzant cannot meet his burden of establishing cause for his procedural default by relying upon an ineffective assistance claim against either trial or appellate counsel based on the failure to raise these constitutional claims.  See Bousley v. United States, 523 U.S. 614, 622 (1998);  Ramirez-Burgos v. United States, 313 F.3d 23, 32 (1st Cir. 2002);  Prou v. United States, 199 F.3d 37, 49 (1st Cir. 1999).  As discussed in the next section, Payzant has not shown that his counsel was constitutionally ineffective and thus their representation deficiencies, if any, cannot constitute sufficient cause to excuse the procedural default.  Murray v. Carrier, 477 U.S. 478, 488 (1986).

Payzant's second ground is simply a rehash of his claim in Ground One, only it is couched as a complaint against the Maine Supreme Judicial Court rather than the trial court and is limited to that Court's failure to allow Payzant's application to appeal his sentence.  As indicated above, to the extent the Law Court refused to engage in a review of the trial court's Hewey analysis, it is purely a matter of state law.  The other constitutional issues mentioned in this ground were never raised by direct appeal and are procedurally defaulted.

Payzant's third ground attacks the decision of the state post-conviction court as "an unreasonable application of" or as "contrary to" federal law as determined by the United States Supreme Court.  As Payzant apparently understands, his section 2254 petition cannot be granted unless the state court decision was:  (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court's decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from a

decision of [the Supreme] Court and nevertheless arrives at a [different] result." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). An unreasonable application of clearly established federal law is one in which "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 407. "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." Id. at 410 (emphasis in original). The import of this distinction is that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. See also Renico v. Lett, __U.S. __, 130 S. Ct. 1855, 1862 (2010). The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) sets out a separate and demanding standard applicable to review of a state court's factual findings. Pike v. Guarino, 492 F.3d 61, 68-70 (1st Cir. 2007). The state court's factual findings are "presumed to be correct," unless the petitioner can rebut this "presumption of correctness" with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In Payzant's case, the United States Supreme Court decision upon which the state post-conviction justice relied by name was Strickland v. Washington, 466 U.S. 668, 694 (1984), applying its two-prong ineffective assistance of counsel standard. His conclusion that trial counsel's strategic decision to forego any arguments about the "one punch" theory did not rise to the level of ineffective assistance was based upon a sound factual record and was certainly not "an unreasonable application of" or "contrary to" the law as set forth in Strickland. The post-conviction justice likewise correctly concluded that there was no violation of Blakely v. Washington, 542 U.S. 296 (2004), because the sentencing court did not exceed the statutory

maximum when imposing sentence on any of the three convictions, Robbery, Aggravated Assault, or Theft.

Finally, although not discussed in the post-conviction justice's ruling, any implicit rejection on constitutional grounds of Payzant's arguments concerning double jeopardy was proper and based upon a sound construction of the three statutory offenses of conviction.  In both the multiple punishment and multiple prosecution contexts, the United States Supreme Court has concluded that when the two offenses for which the defendant is punished or tried cannot survive the "same-elements" test, the double jeopardy bar applies.  See, e.g., Brown v. Ohio, 432 U.S. 161, 168-169 (1977);  Blockburger v. United States, 284 U.S. 299, 304 (1932) (multiple punishment).  In this case, Payzant was convicted of the form of Class A Robbery requiring the State to prove that Payzant committed or attempted to commit theft and that, at the time of his actions, he intentionally inflicted or attempted to inflict bodily injury on another in violation of 17-A M.R.S. § 651(1)(D).  The Class B Aggravated Assault, on the other hand, required the State to prove that Payzant caused *serious* bodily injury to the victim under 17-A M.R.S. § 208(1)(A).  Serious bodily injury is defined by statute to mean bodily injury which creates, as applicable to these facts, "substantial impairment of the function of any bodily member" or "extended convalescence."  17-A M.R.S. § 2.  A broken jaw that is wired shut and requires weeks to heal meets the statutory definition, but even the absence of *serious* bodily injury would not negate the robbery conviction.  The distinction was not lost on the sentencing court because during the Rule 11 proceeding, and immediately after the prosecutor's recitation of the State's version of events, the trial justice interposed, "maybe I was not listening carefully enough, how we establish serious bodily injury.  I think we established injury."  (Rule 11 Tr. at 14-15.) Similarly, the Class C Theft as charged in Count III did not relate to the small items of little

intrinsic value taken from the victim's person at the time of the robbery. Payzant was charged with theft of over $1,000.00 in the unauthorized use of the victim's credit line. The elements of these three offenses are not the same and there is no <u>Blockburger</u> double jeopardy problem.

Ground four of the petition builds on the same arguments and simply challenges the Law Court's decision not to grant a certificate of probable cause to allow a discretionary appeal of the post-conviction court's denial of relief. There was no due process or other constitutional violation in that denial, which was objectively reasonable. Grounds nine, ten and eleven simply rehash these prior arguments and add little of value. In Ground eleven Payzant tries to mount a claim that the post-conviction court's three-page, single-spaced Memorandum of Decision dated May 7, 2010, denying post-conviction relief, did not contain adequate factual findings. However, Payzant never requested further factual findings in the state court and this claim is long since procedurally defaulted.

**B.      The Ineffective Assistance of Counsel Claims**

To succeed on a claim of ineffective assistance of counsel in the context of 28 U.S.C. §2254 review, Payzant "must show both deficient performance by counsel and resulting prejudice." <u>Tevlin v. Spencer</u>, 621 F.3d 59, 66 (1st Cir. 2010) (citing <u>Strickland</u>, 466 U.S. at 687). The deficient performance aspect of the section 2254 burden requires Payzant to demonstrate that counsel's conduct in his case "fell below an objective standard of reasonableness." <u>Id.</u> (quoting <u>Strickland</u>, 466 U.S. at 688). Even without the overlay of 28 U.S.C. § 2254(d) deference, this standard is highly tolerant of defense counsel's strategic choices. "There is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,'" <u>id.</u> (quoting Strickland, 466 U.S. 689), and Payzant carries the burden of defeating the presumption that the decisions of his attorney of which he complains

might be a "sound trial strategy" given professional norms, id. To prevail on a particular claim Payzant must convince the reviewing court that "counsel's choice was so patently unreasonable that no competent attorney would have made it." Id. (quoting Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006)). What is more, for Payzant to satisfy the Strickland "prejudice" element he must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (quoting Porter v. McCollum, 558 U.S. __, 130 S. Ct. 447, 453 (2009) (per curiam)). Payzant's failure "to satisfy one prong of the Strickland analysis obviates the need for a court to consider the remaining prong." Id. (citing Strickland, 466 U.S. at 697).

Grounds five through eight raise a plethora of claims of allegedly ineffective assistance of counsel. In ground five, Payzant argues that appellate counsel's failure to file a memorandum in support of his request for leave to appeal his sentence was constitutionally ineffective assistance. However, nothing in 15 M.R.S. § 2153 or Maine Rule of Appellate Procedure 20 authorizes counsel to file such a memorandum before the Sentence Review Panel acts on a defendant's application for leave to appeal. In his reply memorandum, Payzant recasts this ground and argues for the first time that he means for this ground to cover counsel's failure to file a direct appeal from his conviction, which appeal would have challenged the legality, rather than the propriety, of his sentence. (Doc. No. 13 at 6.) However, Payzant has not identified any viable issue that could or should have been raised on direct appeal from his sentence and thus counsel's failure to take a direct appeal cannot be deemed ineffective assistance.

Ground six claims that counsel was ineffective for failing to withdraw after the Rule 11/sentencing proceedings so new counsel on the sentence appeal could have argued that counsel was ineffective during the Rule 11/sentencing proceedings. This claim ignores two obvious

facts.  First, under Maine law an ineffective assistance of counsel claim cannot be raised on either direct appeal (which includes a discretionary appeal of sentence) and must await post-conviction review.  State v. Nichols, 1997 ME 178, ¶ 4, 698 A.2d 521, 522 ("Today we make clear that we will not consider a claim of the ineffective assistance of counsel on direct appeal; henceforth, we will consider such a contention only after we issue a certificate of probable cause following a hearing on a post-conviction petition.").  Second, under Maine Rule of Criminal Procedure 69, Payzant was entitled to and did receive appointed counsel to handle his post-conviction proceedings.  Payzant had a full opportunity, with new counsel, to challenge the effectiveness of his earlier counsel at the Rule 11/sentencing proceedings and on appeal.

Ground seven contains a laundry list of  eleven claimed errors by trial counsel relating to the Rule 11 and sentencing proceedings.  This list includes, in summary manner, most of the same issues as raised in the state court post-conviction proceeding including the following:  (1) counsel's failure to properly investigate the facts and the legal basis of the statutes of the alleged offenses;  (2) counsel's failure to argue that the aggravated assault and theft charges were subsumed within the definition of robbery;  (3) counsel's failure to make the double jeopardy argument, which is reiterated in item (9);  (4) counsel's failure to make an Apprendi v. New Jersey, 530 U.S. 466, 501 (2000), argument that his sentence was illegally enhanced by the use of facts (the one-punch theory) that had not been proven;  (5) counsel's failure to "flesh out" the factual uncertainty about the number of punches, as he said he would do at the time of the Rule 11 proceeding, resulted in an inappropriately lengthy sentence;  (6) counsel's erroneous concession that the disputed factual issues did not change the elements of the offenses;  (7) counsel's failure to properly advise Payzant of the elements of the offenses for which he pled guilty;  (8) counsel's failure to present character witnesses in mitigation of sentence;  (9)  see

item three above; (10) counsel's failure to file a Rule 35 motion to correct or reduce sentence; and (11) the cumulative effect of all of counsel's errors.

I have already fully explained why the trial court's post-conviction ruling was not an unreasonable application of any existing United States Supreme Court precedent, specifically Strickland, Blockburger, or Blakely. The post-conviction court was fully cognizant of Payzant's claim that counsel was ineffective for not calling specific character witnesses. In point of fact, counsel did call a number of character witnesses and trial counsel testified at the post-conviction hearing that additional witnesses would have been redundant and risked diluting the message. The post-conviction court was also aware that trial counsel had negotiated a plea agreement on the related eluding indictment, for which Payzant received a consecutive sentence that reduced his exposure in connection with those charges from ten years to five years. In assessing the cumulative effect of counsel's representation, that fact certainly has some bearing. Given all of these circumstances, the post-conviction court reasonably concluded that "two very experienced defense lawyers" did not provide ineffective assistance of counsel. (Mem. of Dec., May 7, 2010, at 2.)

CONCLUSION

For the reasons stated above, I recommend that the Court deny Payzant relief under 28 U.S.C. § 2254, with prejudice, and dismiss the petition. I further recommend that a certificate of appealability should not issue in the event Payzant files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c).

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to

12

28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

February 8, 2012                    /s/ Margaret J. Kravchuk
                                      U.S. Magistrate Judge